IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KENNETH LINCOLN

      Plaintiff,

v.                                                                                                CV 18-652 MV/LF

STATE FARM FIRE AND
CASUALTY INSURANCE CO.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant State Farm's Memorandum of Law in Support of Summary Judgment Denying Plaintiff's Breach of Contract Claim [Doc. 101], Plaintiff's Motion to Reconsider [Doc. 102], and Defendant State Farm's Motion to Strike Plaintiff's Response to Motion for Summary Judgment on Breach of Contract [Doc. 105]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that summary judgment in Defendant's favor as to Plaintiff's breach of contract claim is warranted and shall be entered, Plaintiff's Motion to Reconsider is not well-taken and will be denied, and Defendant's Motion to Strike is well-taken and will be granted.

### BACKGROUND

The undisputed facts material to the instant motions are as follows.[1] On February 6, 2016, Plaintiff Kenneth Lincoln's home in Santa Fe, New Mexico was damaged as a result of a house fire. Doc. 1-2 ¶2. At the time of the fire, Plaintiff carried a homeowner insurance

---

[1] The Court has not included extraneous detail, party arguments, and "facts" presented with no evidentiary support in the record.

1

policy (the "Policy") with Defendant State Farm Fire and Casualty Insurance Company ("State Farm"). *Id.* ¶ 3. The coverage limit for Plaintiff's dwelling was $533,644. Under the terms of the Policy, Plaintiff had certain "duties" that obtained after "a loss" to which the Policy applied, including providing Defendant, "as often as [it] "reasonably require[d]," any requested "records and documents, and "submitting to Defendant, "within 60 days after the loss," Plaintiff's "signed, sworn proof of loss which sets forth, to the best of [his] knowledge and belief, . . . specifications of any damaged building and detailed estimates for repair of the damage." Doc. 79-3.

As a result of the fire, Plaintiff made a claim for benefits under the Policy. Doc. 1-2 ¶ 4. On March 17, 2016, Mike Martinez, a "Claims Specialist" for Defendant, sent Plaintiff a letter indicating that Defendant was "currently working on an estimate for the cost of repairs" to Plaintiff's home. Doc. 79-5. The letter advised Plaintiff that, if he wished for Defendant "to consider a contractor's estimate due to differences in either the price or scope of damages," to "submit the contractor's estimate" to Defendant "prior to starting repairs." *Id.* The letter specified that the "contractor's estimate will need to provide a room by room breakdown of materials and labor," and that Defendant "may request to co-inspect with the contractor." *Id.*

On May 12, 2016, Melissa Johnson, a "Team Manager" for Defendant, sent Plaintiff a letter enclosing payment of $344,081.61 based upon an estimate provided by Rockefeller's Construction Inc. ("Rockefeller") "for the repairs to [Plaintiff's] home." Doc. 79-5. The letter notes that "[t]his payment represents the undisputed amount known by State Farm and is not a release of liability." *Id.* The letter further notes that Plaintiff's general contractor "expressed concerns" with "the rebuild estimate provided by Rockefeller," but that Plaintiff had not provided Defendant with "an estimate from [Plaintiff's contractor] to identify areas of

differences in the estimate[s]." *Id.* Per Plaintiff's request, the letter stated, Johnson would mail a copy of the Rockefeller estimate to Plaintiff's contractor. *Id.* Finally, the letter noted that Rockefeller would "be available to meet with" Plaintiff's general contractor "to review any scope and/or pricing concerns." *Id.*

In a letter to Campbell on March 14, 2017, Plaintiff, through his previous counsel, provided a reconstruction estimate prepared by Plaintiff's contractors indicating that the cost of reconstruction would be $625,000, which exceeds the policy limits of $533,644. Doc. 86-1. The letter noted that this estimate "was prepared by actual homebuilders," while Defendant's estimate in response was from Rockefeller, "an estimating company that was not prepared to perform the rebuilding" for Plaintiff. *Id.*

Thereafter, on August 28, 2017, Plaintiff, through his previous counsel, sent a letter to Ron Trujillo, a "Claim Specialist" for Defendant, indicating that Plaintiff had consulted with additional contractors, and attaching rebuilding estimates prepared by Sarcon Construction and Ortega Concepts. *Id.* The letter notes that the bid from Sarcon is in the amount of $607,646.79. *Id.* The letter states that Plaintiff has "now provided [Defendant] with three rebuilding estimates by licensed New Mexico contractors, all of which exceed the available coverage for rebuilding [Plaintiff's] home by a wide margin," while Defendant "has provided only an estimate from Rockefeller, a company neither willing nor able to rebuild [Plaintiff's home]." *Id.* The letter concludes that Defendant "has failed to provide any reputable documentation that rebuilding [Plaintiff's] home will cost less than [his] policy limits." *Id.*

A letter dated December 4, 2017 from Johnson to Plaintiff's previous counsel notes that, under the terms of the Policy, Plaintiff is required "to provide estimates of the damage." *Id.* Johnson states that although Defendant "requested copies of [Plaintiff's] general contractor's

3

estimate multiple times," Plaintiff did not provide such estimate until July 21, 2016, five months after the fire damage to Plaintiff's home.  *Id.*   In response to Plaintiff's prior counsel's comments about Rockefeller, Johnson writes that Defendant has "no evidence that [Rockefeller] is unwilling or unable to rebuild Dr. Lincoln's home."  *Id.*   Further, she writes that, while Defendant feels "comfortable that the estimate amount of $378,000 is accurate," she "advised Dr. Lincoln to let [Defendant] know once the repairs started and if there was hidden damage [Defendant] would reinspect to determine if it was related to the fire and issue a supplement if necessary."  *Id.*

Johnson's letter also addresses the "three rebuild estimates" provided by Plaintiff.  *Id.* With regard to the first estimate, Johnson explains that it was "thoroughly reviewed on September 21, 2016" by Defendant's representatives along with Plaintiff's contractors "on a joint conference call," and that, after "a line by line review," "additional items" were added to the original Rockefeller estimate, and a "supplement" was issued.  *Id.*   As for the other two estimates, Johnson notes the inclusion of items that were "non-covered" repairs.  *Id.*

Johnson goes on to state that, "[i]n order to determine whether any amounts of the other two estimates submitted are covered we need a breakdown and complete copy of the sub bids which State farm has requested multiple times in accordance with the [terms of the Policy]." *Id.*   Johnson notes that "State Farm and Rockefeller[] both provided line item entr[ies] that show the specific measurement and price," and that Defendant needed "to make sure that the amounts being charged are for the similar items and measurements of what was damaged."  *Id.* Thus, Johnson explained, "[i]n order to properly reconcile the Sarcon Construction estimate we need the sub-contractor bids that show specifically what the lump sum amount includes.   This will ensure that the bid quoted is based on the type and quality of materials that were damaged in

the fire loss." *Id.*  Finally, Johnson's letter indicates that a total of $407,614.39 had been paid to date for the fire damage to Plaintiff's home.  *Id.*

In two further letters to Plaintiff's current counsel, one signed by Johnson and another by Trujillo sent on April 27, 2018 and June 11, 2018, respectively, Defendant again advised Plaintiff that, in order for Defendant to "reconcile" Plaintiff's construction estimate, Defendant needed "a complete estimate outlining each line item unit cost, measurement, and the individual sub bids that specif[y] the unit costs and measurements."  Doc. 78-5.  The letters refer Plaintiff to his obligations under the Policy, and note that "[u]ntil Dr. Lincoln fulfills his conditions and duties after a loss, by providing a detailed estimate and sub bids as requested, we are unable to further consider amounts that are not substantiated."  *Id.*

At his deposition, Trujillo testified that the purpose of requesting information regarding the Sarcon bid was so that Defendant could "diligently try to evaluate all that is owed [to Plaintiff] and pay what [Defendant] owe[s]"; "so that [Defendant] could evaluate it and move towards a resolution."  Doc. 79-2 at 55-56.  Trujillo further testified that Defendant did not receive the information requested regarding the Sarcon bid prior to Plaintiff's filing of the instant lawsuit.  *Id.*

During his deposition, Plaintiff testified that he believes that Defendant owes him "the difference" between the amount that Defendant has paid him and the policy limit of $533,644.  Doc. 79-1 at 112.  According to Plaintiff, because the house was beyond repair and, as a result, he "was tearing [it] down . . . and rebuilding it," he did not have to provide estimates to Defendant.  *Id.* at 93.  When asked whether Defendant denied any part of his claim, Plaintiff responded, "No, they just delayed."  Doc. 78-1 at 127.  When asked whether it was his position that Defendant did not promptly investigate his claim, Plaintiff testified, "No, it's not."

5

*Id.* at 126.    During his deposition, Plaintiff was unable to identify any facts, or any provision of the Policy, that Defendant misrepresented to him.    *Id.* at 124.

Plaintiff commenced the instant action in New Mexico state court on May 30, 2018. The sparse "First Amended Complaint for Breach of Insurance Contract, Unfair Claims Practices and Bad Faith" is comprised of eight, one-sentence paragraphs in which Plaintiff asserts in conclusory fashion that, in partially honoring and partially rejecting Plaintiff's claim for coverage benefits under his insurance policy, Defendant "intentionally breached its contract with Plaintiff by failing to honor its policy commitments," "violated the Unfair Claims Practices Act," and "acted in bad faith by failing to timely settle and pay a first party claim."    Doc. 1-2.    On July 9, 2018, Defendant removed the action to this Court.

Defendant sought summary judgment on two of three claims alleged by Plaintiff in his First Amended Complaint, namely, a claim for breach of the common law duty of bad faith and a claim for violation of the New Mexico Unfair Insurance Practices Act ("UIPA").    In a Memorandum Opinion and Order entered on September 30, 2020 ("September 2020 Opinion"), the Court granted the motion, finding that Plaintiff failed to show that there is a genuine issue for trial on either his bad faith claim or his UIPA claim.    Also in its Opinion, the Court found that the sole factual allegation to support Plaintiff's breach of contract claim was the same factual allegation from which Plaintiff's bad faith and UIPA claims arise, and that the material facts relevant to this allegation appear to be undisputed and before the Court on the record submitted in connection with Defendant's MSJ on Bad Faith Claim and MSJ on UIPA Claim. Accordingly, the Court gave notice that, pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure, it would consider summary judgment on Plaintiff's breach of contract claim.    Before so considering, however, the Court gave the parties an opportunity to file memoranda of law

addressing whether summary judgment as to Plaintiff's breach of contract claim should be entered. Specifically, the Court directed the parties to file memoranda of law, if any, no later than October 21, 2020 addressing whether the Court should grant summary judgment on Plaintiff's claim for breach of contract.

In accordance with the Court's directive, on October 21, 2020, Defendant filed a memorandum of law arguing that the Court should grant summary judgment in its favor on Plaintiff's breach of contract claim. Doc. 101. Plaintiff, however, did not file anything by the October 21, 2020 deadline weighing in on this issue, nor did he seek additional time to do so. Instead, Plaintiff waited until November 4, 2020 to file a motion to reconsider the Court's September Opinion, Doc. 102, and until November 10, 2020 to file a response in opposition to Defendant's memorandum of law, which he mischaracterized as a "motion" for summary judgment. Doc. 103. Thereafter, Defendant filed a response in opposition to Plaintiff's motion to reconsider, Doc. 104, to which Plaintiff filed no reply. Defendant also filed a motion to strike Plaintiff's response to its memorandum of law, Doc. 105, to which Plaintiff filed no response in opposition.

## DISCUSSION

I.     Reconsideration of the Court's September 2020 Opinion

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. *In re Thornburg Mortgage, Inc. Secs. Litig.*, No. 07-85, 2011 WL 2429189, *19 (D.N.M. June 2, 2011). When a party seeks to obtain reconsideration of a non-final order, the motion is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*, 983 F.2d 1120, 1122 n.1 (10th Cir. 1991). Although a

district court has "considerable discretion" to revisit its prior decisions, *see Thornburg Mortgage*, 2011 WL 2429189 at *19, "as a rule [the court] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted).

Tenth Circuit case law is clear that a motion for reconsideration is an "inappropriate vehicle [ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Fye v. Okla.*, 516 F.3d 1217, 1224 (10th Cir. 2011) (finding district court did not abuse its discretion in denying motion for reconsideration on basis that "considerations of fairness and judicial economy outweigh[ed] the Plaintiffs' interest in getting a second (or third) bite at the summary judgment apple"); *Otero v. Nat'l Distrib. Co., Inc.*, 627 F. Supp. 2d 1232, 1237 (D.N.M. 2009) (motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple"). Rather, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

In his motion, Plaintiff neither cites this standard nor explains how he would be entitled to reconsideration of the September 2020 Opinion thereunder. Rather, Plaintiff argues that the Court "misconstrued the facts and misapplied the law to arrive at its conclusions," and

improperly "made findings of fact."    Doc. 102.    At essence, Plaintiff takes issue with the fact that the Court did not credit his unsubstantiated arguments as evidence and instead determined, based on the undisputed facts, that no genuine issue remains as to his bad faith and UIPA claims.

Plaintiff contends that the Court "found" that Rockefeller's estimate was "the only way to go," that the Court "disregarded" the proposals that Plaintiff obtained and his policy limit, that the Court "mentions" that Defendant was willing to reconcile with Plaintiff but that this is "not really" true, and that the Court took "sides" in finding that Mr. Wing's opinion was insufficient to support Plaintiff's contentions.    *Id.* at 1-3.    The Court made no finding as to the quality of the Rockefeller estimate, but instead found that Plaintiff submitted no evidence to support his theory that the level of detail that Defendant required, *i.e.,* the level of detail demonstrated by the Rockefeller estimate, was, as he argued, "an absurd way to bid new construction."    The Court disregarded neither the proposals obtained by Plaintiff nor his policy limit, but instead found that Plaintiff failed to substantiate his argument that Defendant's refusal to "settle" his claim for the amounts of those bids or his policy limits was unreasonable or the product of good faith.    The Court did not ignore Plaintiff's opinion as to Defendant's willingness to reconcile the Rockefeller bid with Plaintiff's proposed bids but rather recounted the undisputed facts in the record, which reflected consistent efforts on the part of Defendant to reconcile those bids, and explained that in the face of those facts, Plaintiff failed to present any contrary facts to support his opinion as to their sincerity.    Finally, as to Mr. Wing's testimony, the Court did not take sides but rather explained that, as a matter of law, Mr. Wing's opinion did not constitute evidence to support Plaintiff's argument.

In short, Plaintiff has not established that the Court misapprehended the facts, a party's position, or the controlling law, and thus is not entitled to reconsideration of the September 2020

Opinion.  Instead, Plaintiff continues to argue that his bad faith claim should be submitted to a jury.  Doc. 102 at 3.  As the Court previously explained, however,

> in order to overcome summary judgment on his bad faith claim, Plaintiff is required to cite evidence tending to show that Defendant's refusal to pay further amounts in connection with the fire damage to Plaintiff's home, without first receiving more detailed estimates from Plaintiff's contractors, was "frivolous or unfounded," *i.e.*, arbitrary or baseless, and lacking support in the language of the Policy.  Plaintiff fails to meet this burden.  Defendant thus is entitled to summary judgment on Plaintiff's bad faith claim.

Doc. 100 at 12.

## II.     Summary Judgment on Plaintiff's Breach of Contract Claim

Rule 56(f)(3) provides that, "[a]fter giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56.  A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).  "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Id.* (citation omitted).  In other words, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* (citation omitted).

In the September 2020 Opinion, the Court gave notice that, pursuant to Rule 56(f)(3), it would consider summary judgment on Plaintiff's breach of contract claim.  The Court directed the parties to file memoranda of law, if any, no later than October 21, 2020, addressing whether the Court should grant summary judgment on Plaintiff's claim for breach of contract.  In accordance with the Court's directive, on October 21, 2020, Defendant filed a memorandum of law arguing that the Court should grant summary judgment in its favor on Plaintiff's breach of

contract claim.   Doc. 101.   Plaintiff, however, did not file a memorandum by the October 21, 2020 deadline, nor did he seek additional time to do so.   Instead, on November 10, 2020, Plaintiff filed a response in opposition to Defendant's memorandum of law.   Doc. 103.

### A.      Defendant's Motion to Strike

As an initial matter, Defendant asks the Court to strike Plaintiff's response.   Defendant correctly argues that Plaintiff's response does not comply with the Court's directive that the parties file briefing by October 21, 2020, and that, even if Plaintiff were permitted to file a response in opposition to Defendant's memorandum, that response would have been due on November 4, 2020, six days before Plaintiff filed his response.   Plaintiff has filed no response to Defendant's motion to strike his response, and his failure to do so constitutes his consent to the motion.   D.N.M. LR-Civ. 7.1(B).

The Court agrees that Plaintiff's response was improperly filed and should not be considered.   The Court notes that, even if it were to consider Plaintiff's response, it would not be convinced thereby.   Plaintiff's response fails to state the standard on summary judgment, much less establish how that standard is not met as to his breach of contract claim.   Rather than establish, through facts, that there is a genuine dispute, Plaintiff argues without any support that "the correct and fair number" that Defendant should have paid to Plaintiff to rebuild his home is "somewhere in between" what Defendant paid and what Plaintiff seeks.   Doc. 103 at 2.   While Plaintiff thus identifies a disagreement between the parties, he does not equally identify a factual dispute as to whether Defendant breached the terms of the Policy.

### B.      Summary Judgment is Warranted.

In the Complaint, Plaintiff alleges that, by partially rejecting his claim for coverage benefits under the Policy, Defendant "fail[ed] to honor its policy commitments," thereby

11

"intentionally breach[ing] its contract with Plaintiff." Doc. 1-2 ¶ 5. But just as Plaintiff cited no evidence to overcome summary judgment on his bad faith and UIPA claims, Plaintiff cited no evidence to overcome summary judgment on his breach of contract claim.

The crux of Plaintiff's breach of contract claim is not that Defendant denied any part of his claim (and in fact, he has conceded that no such denial happened), but rather that Defendant has refused to pay him the full amount of his Policy limit. But Plaintiff has pointed to no evidence to support his theory that by paying him less than the Policy limit, Defendant breached the terms of the Policy. And to the contrary, Defendant has submitted evidence, unrefuted by Plaintiff, that it has never refused to pay additional amounts for Plaintiff to rebuild his home, but rather consistently informed Plaintiff that it would not be able to consider further amounts unless and until Plaintiff complied with *his* obligations under the Policy to provide detailed estimates for its consideration.

Plaintiff simply has failed to substantiate his position that Defendant's assessment of Plaintiff's claim breached any term of the Policy. Because he has cited no evidence tending to show that Defendant's refusal to pay further amounts in connection with the fire damage to Plaintiff's home, without first receiving more detailed estimates from Plaintiff's contractors, violated any terms of the Policy, Plaintiff is unable to overcome summary judgment on his breach of contract claim.

## CONCLUSION

Plaintiff has failed to show that there is any basis for the Court to reconsider its decision granting summary judgment in Defendant's favor on Plaintiff's bad faith and UIPA claims. Further, Plaintiff has failed to show that there is a genuine issue for trial on his breach of contract claim. Accordingly, summary judgment is proper on that claim.

**IT IS THEREFORE ORDERED** that summary judgment is **GRANTED** in Defendant's favor on Plaintiff's breach of contract claim, consistent with Defendant State Farm's Memorandum of Law in Support of Summary Judgment Denying Plaintiff's Breach of Contract Claim [Doc. 101], Plaintiff's Motion to Reconsider [Doc. 102] is **DENIED**, and Defendant State Farm's Motion to Strike Plaintiff's Response to Motion for Summary Judgment on Breach of Contract [Doc. 105] is **GRANTED**.

DATED this 20th day of January 2021.

_____
MARTHA VAZQUEZ
United States District Judge